# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br>ORANGE COUNTY NURSERY, INC.,<br><br>                      Debtor,<br>THE MINORITY VOTING TRUST,<br>David F. Veyna, Carmen Veyna, and<br>Anna M. Zankel, Trustees,<br><br>                      Appellants,<br>            v.<br>ORANGE COUNTY NURSERY, INC.,<br><br>                      Appellee. | Case Nos.  CV 09-08158 DMG<br>                    CV 10-01605 DMG<br>                      CV 10-05808 DMG<br><br>**ORDER RE BANKRUPTCY APPEAL**<br><br><br><br><br>Bankruptcy No. 1:09-bk-22100-GM |

This matter is before the Court on various appeals from the Bankruptcy Court. The Court deems this matter suitable for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 8012-7. For the reasons set forth below, the decisions of the Bankruptcy Court are REVERSED.

## I.
## FACTUAL AND PROCEDURAL BACKGROUND

Debtor and Appellee Orange County Nursery, Inc. ("OCN") is a closely held corporation that has been continuously run by the Veyna family since the 1880s. It

-1-

operates a wholesale tree nursery selling bare root and containerized trees with growing grounds in California and Texas. The relationship among OCN's shareholders has grown acrimonious over time and the shareholders have split into two factions. OCN's majority shareholders exercise control through a voting trust that owns 50.25% of the corporation's stock. (Case No. 09-08158, Appellant's Opening Brief at 3-4; Case No. 09-08158, Appellee's Brief at 3-4.)

Appellants are minority shareholders ("Minority") who own 40.25% of OCN's stock. The Minority seeks to sever all ties to OCN. On August 4, 2006, the Minority filed a verified complaint in Orange County Superior Court for OCN's dissolution under California Corporations Code section 1800(b)(4) and (b)(5); inspection of corporate records, documents, and premises; appointment of a receiver; and injunctive relief.

On June 29, 2007, OCN notified the Superior Court of its election,[1] under California Corporations Code section 2000,[2] to purchase the Minority's 950 shares of capital stock and thereby avoid a trial on the merits and potential dissolution. On July 27, 2007, the parties filed a stipulation, which the court adopted later that day, that OCN would purchase the Minority's shares in exchange for a stay of the Minority's suit.

---

[1] It is not clear whether OCN or the majority shareholders initiated the appraisal process (*see* Case No. 09-08158, Appellants' Excerpts of Record ("ER1") 4), but the distinction is immaterial. For convenience, the Court refers to both the majority shareholders generally and the corporation as "OCN."

[2] This section provides that "in any suit for involuntary dissolution," the majority shareholders "may avoid the dissolution of the corporation and the appointment of any receiver by purchasing for cash the shares owned by the [minority shareholder plaintiffs] at their fair value." Cal. Corp. Code § 2000(a). If the majority shareholders elect to purchase the shares owned by the minority shareholder plaintiffs but the parties are unable to agree upon the fair value of the shares, the court, upon application by the majority shareholders, "shall stay the winding up and dissolution proceeding and shall proceed to ascertain and fix the fair value of the [plaintiffs'] shares." *Id*. § 2000(b). To determine the shares' fair value, the court appoints three disinterested appraisers, whose award, when confirmed by the court, is final and conclusive upon all parties. The court then enters a decree providing for the "winding up and dissolution of the corporation unless payment is made for the shares within the time specified." *Id*. § 2000(c). If the majority shareholders "desire to prevent the winding up and dissolution, they shall pay to the [minority shareholder plaintiffs] the value of their shares ascertained and decreed within the time specified . . . , or, in case of an appeal, as fixed on appeal. On receiving such payment or the tender thereof, the [plaintiffs] shall transfer their shares to the [majority shareholders]." *Id*. § 2000(d).

Because the parties could not agree on the shares' fair value, the court stayed the proceedings and appointed three independent appraisers to determine a valuation for OCN. On October 14, 2008, the appraisers submitted a unanimous report, which calculated OCN's value as of August 4, 2006 to be $12.19 million.[3]  The Superior Court entered a decree on November 21, 2008, confirming the appraisers' valuation, determining the *pro rata* value for the Minority shares to be $4,906,475, and awarding the Minority $343,453 for one year of interest. The decree further ordered as follows:

> 4. OCN shall pay plaintiffs the sum of $5,249,928.00, by cashier's check or wire transfer . . . , to be received by plaintiffs' counsel on or before December 15, 2008 at 5:00 p.m.
>
> 5. Upon receipt of payment in full, plaintiffs shall transfer the Shares to OCN.
>
> 6. OCN is hereby ORDERED liquidated, wound up and dissolved if payment in the full is not timely received by plaintiffs' counsel. In such event, 1) judgment shall be entered against OCN and its surety or sureties for all expenses and attorneys' fees incurred by plaintiffs in connection with OCN's election on June 26, 2007 to purchase the Shares pursuant to Corporations Code § 2000, according to proof; and 2) the parties shall attend a case management conference . . . to discuss issues related to liquidation, including the possible appointment of a receiver to assume control of OCN and supervise the liquidation process.

(ER1 71-72.)

OCN appealed the decree on December 5, 2008. On December 8, 2008, OCN requested that the California Court of Appeal issue a stay. The Court of Appeal denied

---

[3] The shares were valued as of the date that the dissolution suit commenced. *See* Cal. Corp. Code § 2000(f).

OCN's request on the grounds that (1) California law does not provide for an automatic stay of a decree issued under California Corporations Code section 2000; and (2) the decree was self-executing. *Veyna v. Orange County Nursery, Inc.*, 170 Cal. App. 4th 146, 155-56, 87 Cal. Rptr. 3d 658 (2009). The Court of Appeal noted that OCN might nonetheless seek a discretionary stay but that it should do so initially in the Superior Court. The Court of Appeal further noted that any such discretionary stay would be conditioned upon OCN posting appropriate security to guarantee the purchase of the Minority's shares. *Id*. at 157-58. In addition, the Court of Appeal extended OCN's payment deadline to January 22, 2009 at 4:00 p.m. *Id*. at 158.

On January 20, 2009, OCN filed with the Superior Court an *ex parte* application for stay without a bond requirement. The Superior Court denied OCN's application for a stay on January 21, 2009.

On January 22, 2009, at 1:57 p.m., OCN filed a bankruptcy petition for corporate reorganization under Chapter 11 of the Bankruptcy Code. The Minority filed a proof of claim on May 14, 2009, asserting its entitlement to $6,008,424.75, which included $758,496.75 in prepetition fees and costs, based on the Superior Court's decree. On June 14, 2009, OCN filed its first amended plan of reorganization, which classified the Minority's claim as an equity interest-related claim, which would not receive anything under the plan. The parties subsequently stipulated to have the Bankruptcy Court determine the treatment of the Minority's claim.

On October 15, 2009, the Bankruptcy Court, the Honorable Geraldine Mund presiding, held a hearing and issued a tentative ruling ("Bankruptcy Order"), which it adopted in an order issued the next day.[4] The Bankruptcy Court found, *inter alia*, that at the time of the bankruptcy petition, the Minority had an equity interest through its shares of stock. The Minority appealed this ruling to this Court in case number 09-08158 and

---

[4] The October 16, 2009 order stated only the court's findings. The Bankruptcy Court filed its tentative ruling, which provided the court's reasoning, on October 20, 2009.

1 appealed the Bankruptcy Court's confirmation of OCN's reorganization plan, which
2 treats the Minority as equity-holders, in case number 10-01605.  The Bankruptcy Court
3 allowed the Minority's claim for prepetition fees and costs related to the Superior Court
4 action but, in a March 22, 2010 order, found that the award was limited to the amount of
5 the $150,000 bond posted by OCN.  The Minority appealed this ruling in case number
6 10-05808.

## II.
## STANDARD OF REVIEW

9     A district court reviews a bankruptcy court's conclusions of law and interpretation
10 of the Bankruptcy Code *de novo*.  *Greene v. Savage (In re Greene)*, 583 F.3d 614, 618
11 (9th Cir. 2009) (citing *Salazar v. McDonald (In re Salazar)*, 430 F.3d 992, 994 (9th Cir.
12 2005)).  Factual findings are reviewed for clear error.  The Court must accept the
13 bankruptcy court's factual findings unless, upon review, the Court is left with the definite
14 and firm conviction that the bankruptcy judge has committed a mistake.  *Id.* (citing
15 *Latman v. Burdette*, 366 F.3d 774, 781 (9th Cir. 2004)).

## III.
## JURISDICTION

18     OCN initially asserts that this Court lacks jurisdiction over the appeal because it is
19 an interlocutory ruling that the Bankruptcy Court did not certify for appeal.  The Ninth
20 Circuit has adopted a "pragmatic approach" to finality in bankruptcy that "emphasizes the
21 need for immediate review, rather than whether the order is technically interlocutory."
22 *Rosson v. Fitzgerald (In re Rosson)*, 545 F.3d 764, 769 (9th Cir. 2008) (quoting *Bonham
23 v. Compton (In re Bonham)*, 229 F.3d 750, 761 (9th Cir. 2000).  Thus, a bankruptcy order
24 is deemed final and appealable where it (1) "resolves and seriously affects substantive
25 rights"; and (2) "finally determines the discrete issue to which it is addressed."  *Id.*
26 (quoting *Bonham*, 229 F.3d at 761).  The classification of a claimant's interest as either
27 debt or equity meets both of these criteria.  *See, e.g.*, *Racusin v. Am. Wagering, Inc. (In re
28 Am. Wagering, Inc.)*, 493 F.3d 1067, 1071 (9th Cir. 2007); *see also Poonja v. Alleghany*

*Props. (In re Los Gatos Lodge, Inc.)*, 278 F.3d 890, 894 (9th Cir. 2002) ("[T]he bankruptcy court's allowance or disallowance of a proof of claim is a final judgment."). Accordingly, the Court has jurisdiction under 28 U.S.C. § 158(a).

## IV.
## DISCUSSION

The threshold issue before the Court is whether the Minority has a "claim" arising from the Superior Court's decree, as the Minority maintains, or merely equity in OCN, as the Bankruptcy Court found and OCN contends. The Bankruptcy Code defines "claim" as follows:

> (A)  right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>
> (B)  right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5). In crafting this definition, Congress intended "to adopt the broadest available definition of 'claim.'" *Johnson v. Home State Bank*, 501 U.S. 78, 83, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991). "The Code utilizes this 'broadest possible definition' of claim to ensure that 'all legal obligations of the debtor, *no matter how remote or contingent*, will be able to be dealt with in the bankruptcy case.'" *Centre Ins. Co. v. SNTL Corp. (In re SNTL Corp.)*, 380 B.R. 204, 216 (B.A.P. 9th Cir. 2007) (quoting *Cal. Dep't of Health Servs. v. Jensen (In re Jensen)*, 995 F.2d 925, 929-30 (9th Cir. 1993); emphasis in *Jensen*), *aff'd and adopted by* 571 F.3d 826 (9th Cir. 2009) (*per curiam*).

**A.  The Bankruptcy Court Erred In Finding That The Classification Of The Minority's Interest Turned On Whether Its Right To Payment Had Matured**

The Bankruptcy Court mistakenly concluded that a claim arose from the Superior Court decree only if "the right to payment had matured or become non-contingent."

(ER1 5.) Although the Bankruptcy Court acknowledged that its interpretation conflicted with the plain statutory language (*see* ER1 7), it conflated the issue of subordination with the determination of whether the Minority claim should be allowed at all.[5, 6]

Several of the cases the Bankruptcy Court examined dealt primarily or exclusively with subordination. For instance, *American Broadcasting Systems, Inc. v. Nugent (In re Betacom of Phoenix, Inc.)*, 240 F.3d 823 (9th Cir. 2001), involved only subordination. There was no dispute that the interest at issue was a claim. Similarly, in *Official Committee of Unsecured Creditors v. American Capital Financial Services (In re Mobile Tool International, Inc.)*, 306 B.R. 778 (Bankr. D. Del. 2004), the sole issue before the court was whether certain claims arising from the sale of stock should be subordinated to all other claims under 11 U.S.C. § 510(b).

---

[5] In the parties' stipulation, they presented the following issues to the Bankruptcy Court:
a. Should the Minority Claim be disallowed as duplicative of the Minority Shareholders' equity interest, as argued by Debtor?
b. Should the Minority Claim, if allowed at all, be subordinated to all other claims and equity pursuant to Bankruptcy Code § 510(b), as argued by Debtor[?]
c. Does the Minority Claim entitle the Minority to treatment different from other equity holders under the Plan?
d. Should some or all of the Minority Claim be classified in a class which has priority to Class 5 Equity so that the Minority Shareholders receive a distribution on their Claim in addition to the right to be treated as Class 5 Equity, which Debtor opposes?
e. Does the Rooker Feldman doctrine apply so as to preclude avoidance of the judgment as described in Debtor's plan and so that all or a portion of the Minority claim, as established by the Superior Court judgment, entitled to treatment superior to Class 5 equity, but subordinated to unsecured creditors under Section 510 (c)?

(ER1 13.)

[6] The Bankruptcy Code provides that "a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 on account of such a claim, shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock." 11 U.S.C. § 510(b). The subordination inquiry is distinct from the determination whether a claim should be allowed in the first place. *See In re Bayou Group, LLC*, 372 B.R. 661, 666 (Bankr. S.D.N.Y. 2007).

The Bankruptcy Court also considered *Burtch v. Gannon (In re Cybersight LLC)*, No. 02-11033, 2004 WL 2713098 (D. Del. 2004), which involved an issue more analogous to the present circumstances. In *Cybersight*, the debtor's former employee obtained a prepetition final judgment against the debtor for payment in connection with the former employee's shares in the company. The former employee filed a proof of claim, which the bankruptcy court classified as an unsecured claim. The bankruptcy trustee appealed the classification of the judgment as a claim rather than an equity interest subject to subordination. *See id*. at *1-2. The district court affirmed the bankruptcy court, finding that "[o]nce the state court entered [the former employee's] judgment, the judgment became a fixed debt obligation of Cybersight and [the former employee] was entitled to general unsecured claimant status." *Id*. at *3. To the extent the Bankruptcy Court interpreted this language to mean that a judgment must create a "fixed" debt obligation to qualify as a claim, it was mistaken. A right to payment need not be fixed. *See* 11 U.S.C. § 101(5)(A).

OCN cites cases involving "the right to demand purchase of an equity interest" which hold that such a right "does not change that interest into a claim." (Case No. 09-08158, Appellee's Brief at 13.) This is a straw argument. The cases that OCN cites deal with equity securities, *i.e.*, warrants or rights to purchase or redeem shares, *see* 11 U.S.C. § 101(16). As discussed below, the facts here do not involve the Minority's right to *demand* payment for an equity interest; the Minority had already demanded payment by instituting proceedings under the California Corporations Code. The Minority instead had a court-ordered right to payment for its shares—either directly from OCN or through dissolution proceedings.

The case of *Sheerin v. Davis (In re Davis)*, 3 F.3d 113 (5th Cir. 1993), cited by the Minority, presents an analogous situation where a state court had ordered a combination of cash payouts and equitable remedies, including dissolution, to reimburse a minority shareholder for his equity in a corporation. The corporation subsequently filed for bankruptcy. The Fifth Circuit treated all aspects of the state court judgment as claims.

Although the main issue before the Fifth Circuit was whether the individual remedies were dischargeable, an issue that is not properly before this Court, there was no question that the state court judgment constituted the kind of enforceable right to payment or equitable remedy contemplated in 11 U.S.C. § 101(5).

### B. The Bankruptcy Court Erred In Finding That The Minority Did Not Have A Right To Payment

"Creditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code." *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 20, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000). Because Congress left to state law the determination of property rights in the debtor's assets, "the 'basic federal rule' in bankruptcy is that state law governs the substance of claims." *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 450-51, 127 S.Ct. 1199, 167 L.Ed.2d 178 (2007) (quoting *Raleigh*, 530 U.S. at 20; internal quotation marks omitted).

California Corporations Code section 2000 provides for a "special proceeding" that gives right to a "remedy . . . in the form of the alternative decree." *Go v. Pac. Health Servs., Inc.*, 179 Cal. App. 4th 522, 532, 101 Cal. Rptr. 3d 736 (2009). The decree is "self-executing," *Veyna*, 170 Cal. App. 4th at 156, and is "final and conclusive upon all parties," Cal. Corp. Code § 2000(c). Once entered, the decree's outcome is "inevitable": either the corporation will pay the minority shareholders the designated purchase price for their shares or a judgment of dissolution will be entered. *Go*, 179 Cal. App. 4th at 532.

In characterizing the Minority's interest as equity, the Bankruptcy Court began by correctly noting that the nature of the Minority's interest depends on its position at the time the bankruptcy petition was filed. *See* 11 U.S.C. § 502(b); *SNTL*, 571 F.3d at 838. The Bankruptcy Court then mistakenly focused on OCN's interest:

> Under no circumstances (either before or after Jan. 21 [sic] at 4:00 p.m.) was the Minority entitled to a judgment for damages (except as to its

> fees and costs) or to elect to receive payment or to force dissolution[.] This electin [sic] was solely in the hands of the debtor/Majority. At the time that the bankruptcy petition was filed, 4:00 pm had not yet come and so the debtor/Majority still had the right to make the payment. At the time that a [sic] bankruptcy is filed, the debtor/Majority still had its options open and because the payment was a time-bound act to be performed under a court order, §108(b) gave the debtor-in-possession an extension to comply.

(ER1 7.)

That the Superior Court's decree provided OCN with a choice how to proceed is immaterial to the Minority's interest at the time the bankruptcy petition was filed. From the moment the Superior Court entered the decree, the Minority had an enforceable right to payment for its shares—either $5,249,928 for their appraised value or, if OCN chose not to tender this amount by the court-imposed deadline, for their actual value upon OCN's forced dissolution. In this way, the Minority did not "retain[] all of the indicia of any other shareholder." (ER1 8.) No other shareholder was entitled to payment for its shares' appraised value as of August 4, 2006 or to liquidate the corporation. Indeed, no other shareholder would have had standing to dissolve OCN through enforcement of the Superior Court's decree.

As the Bankruptcy Court noted, OCN did not make a prepetition payment for the Minority's shares and the trustee did not do so within 60 days after filing the petition.[7] Therefore, the Minority has a claim for the value of its shares had OCN been dissolved.[8]

---

[7] *See* 11 U.S.C. 108(b). This section "operates to extend time periods for actions that could have been taken by the debtor prepetition that may then be taken on behalf of the estate by the trustee." 2 *Collier on Bankruptcy* ¶ 108.02 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2010). Its purpose "is to permit the trustee, when he steps into the shoes of the debtor an extension of time for filing an action or doing some other act that is required to preserve the debtor's rights." *Santa Fe Dev. & Mortgage Corp. v. McCormack (In re Santa Fe Dev. & Mortgage Corp.)*, 16 B.R. 165, 167 (B.A.P. 9th Cir. 1981) (citing H.R. Rep. No. 95-595 (1977)).

[8] The Bankruptcy Code specifically provides that a bankruptcy court shall estimate "(1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly

Whether the appropriate valuation is the appraised value or some other value is a matter for the Bankruptcy Court to determine in the first instance. To the extent the Bankruptcy Court's subsequent orders—including its order adopting OCN's reorganization plan—treat the Minority's interest as equity, these orders will need to be vacated or modified consistent with this Order.

**C.    The Bankruptcy Court Erred By Limiting The Fee Award Under California Corporations Code Section 2000 To The Amount Of The Bond**

The Minority also appeals the Bankruptcy Court's determination that the award for expenses and attorney's fees available under California Corporations Code section 2000 is limited to the amount of the bond posted by OCN—$150,000. A "fundamental rule of statutory construction" is to ascertain the legislature's intent by first looking to the statutory language. *Go*, 179 Cal. App. 4th at 530 (quoting *Smith v. Workers' Comp. Appeals Bd.*, 96 Cal. App. 4th 117, 123, 116 Cal. Rptr. 2d 728 (2002)). When it is clear and there is no uncertainty as to the legislative intent, a court looks no further and simply enforces the statute according to its terms. *Id*.

The relevant statutory language provides that if the majority shareholders fail to purchase the shares by the deadline, "judgment shall be entered against them and the surety or sureties on the bond for the amount of the expenses (including attorneys' fees) of the [minority shareholders]." Cal. Corp. Code § 2000(c). Nothing in this language suggests that the expenses and fees should be limited to the amount in the bond. Courts paraphrasing this sentence do not employ limiting constructions. *See, e.g.*, *Go*, 179 Cal. App. 4th at 531 ("[The majority shareholders'] only liability [upon forced dissolution] would be to pay the expenses (including attorney fees) incurred by the [minority shareholders] in the appraisal process."); *Cotton v. Expo Power Sys., Inc.*, 170 Cal. App. 4th 1371, 1376, 89 Cal. Rptr. 3d 112 (2009) ("If the [majority shareholders] do not pay

---

delay the administration of the case; or (2) any right to payment arising from a right to an equitable remedy for breach of performance." 11 U.S.C. § 502(c). Allowing the Minority to enforce dissolution proceedings would clearly cause undue delay to the Chapter 11 reorganization proceedings.

-11-

for the shares within the specified time, they are charged with the expenses of the [minority shareholders], including attorneys' fees.").

The Bankruptcy Court interpreted the statute as if there were a comma inserted after the word "sureties," *i.e.*, as if the statute had provided: "[J]udgment shall be entered against them and the surety or sureties, on the bond . . . ." (Case No. 10-05808, Appellants' Excerpts of Record ("ER3") 193.) Thus, the Bankruptcy Court construed the statute to mean that judgment shall be entered *on the bond* against OCN and the surety or sureties rather than that judgment shall be entered against (1) OCN and (2) *the surety or sureties on the bond*. This was error. A court should not insert punctuation into a statute where its meaning is clear and doing so would materially alter that meaning. *See United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 424, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).

The statutory language at issue has an unambiguous meaning without resort to additional punctuation. Under section 2000, the majority shareholders must initially "give bond with sufficient security to pay the *estimated* reasonable expenses (including attorneys' fees)." Cal. Corp. Code § 2000(b) (emphasis added). If the majority shareholders ultimately opt not to purchase the minority's shares, they are liable for the minority shareholders' expenses, including attorney's fees. To effectuate the payment for expenses and fees, the court enters judgment against the majority shareholders as well as against the surety on the bond. *Id*. § 2000(c). If the award is no greater than the amount of the bond, then the minority shareholders can—if they so choose—obtain payment entirely from the bond surety. In any event, but particularly if the award exceeds the bond amount, the minority shareholders can attempt to recover some or all of the award directly from the majority shareholders through the judgment against them.

The fact that the statute does not contain a comma after "surety or sureties" is significant; it suggests that "on the bond" modifies only "surety or sureties."

The punctuation of a statute can be helpful in ascertaining its proper interpretation. A longstanding rule of statutory construction—the "last

-12-

> antecedent rule"—provides that qualifying words, phrases and clauses are to be applied to the words or phrases immediately preceding and are not to be construed as extending to or including others more remote. Evidence that a qualifying phrase is supposed to apply to all antecedents instead of only to the immediately preceding one may be found in the fact that it is separated from the antecedents by a comma.

*Garcetti v. Superior Court*, 85 Cal. App. 4th 1113, 1120, 102 Cal. Rptr. 2d 703 (2000) (quoting *White v. County of Sacramento*, 31 Cal. 3d 676, 680, 183 Cal. Rptr. 520 (1982); internal quotation marks and citations omitted).

Even aside from the fact that the construction advocated by OCN finds little textual support, it is unclear why the California legislature would adopt such an approach given the statutory language.[9] Under section 2000, the bond amount is only an estimate of the minority shareholders' reasonable expenses. It would be strange to penalize the minority shareholders every time a court underestimated the expenses that were reasonably incurred.

Thus, the Bankruptcy Court was incorrect in its conclusion that section 2000 limits the recovery of fees to the amount of the bond. OCN urges the Court to affirm the Bankruptcy Court on the alternative ground that the Minority provided insufficient evidence to support its requested fee award. Yet, as OCN concedes, the Bankruptcy Court did not rule on either the sufficiency of the Minority's evidence or OCN's

---

[9] In *West Hills Farms, Inc. v. RCO AG Credit, Inc.*, 170 Cal. App. 4th 710, 88 Cal. Rptr. 3d 458 (2009), the court held that California Corporations Code section 800, which pertains to shareholder derivative actions, limits an award for expenses and attorney's fees to the amount of the bond. As the Bankruptcy Court recognized (*see* ER3 192), however, section 800 is inapplicable to the present analysis because it differs markedly from section 2000. Section 800 "makes no mention at all of attorney fees or expenses" other than "describing what the bond will secure." *West Hills Farm*, 170 Cal. App. 4th at 717. Therefore, it does not "create an independent basis for recovery of attorney fees or costs *apart from recourse to the bond.*" *Id.* Section 2000, in contrast, contains both a section providing for the bond and a separate section providing for the award of reasonable expenses. *West Hills Farm* would thus characterize section 2000 as an "attorney fee liability" statute as distinguished from section 800, which is a "security" or "bond" statute. *Id.* n.9.

objections thereto. While OCN is correct that this Court may affirm based on "any ground supported by the record" (Case No. 10-05808, Appellee's Brief at 8 (quoting *Atel Fin. Corp. v. Quaker Coal Co.*, 321 F.3d 924, 926 (9th Cir. 2003) (*per curiam*)), the reasonableness of a request for attorney's fees is a factual finding properly made by the Bankruptcy Court prior to appellate review.

Because this Court is not the appropriate forum for factual determinations in bankruptcy proceedings, the Court declines to assess the reasonableness of the fee request. On remand, the Bankruptcy Court should make this assessment.[10]

## V.

## CONCLUSION

In light of the foregoing, the Bankruptcy Court is REVERSED and this case is REMANDED for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

DATED: October 12, 2010

_____
DOLLY M. GEE
UNITED STATES DISTRICT JUDGE

---

[10] The Minority requests that this Court order the Bankruptcy Court to "remand" this issue to the Superior Court. This request is DENIED. Federal courts and state courts are equally well suited to determining the reasonableness of expenses and attorney's fees and California has no compelling interest in adjudicating this issue.

-14-